UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

```
UNITED STATES OF AMERICA      :
                              :
     v.                       :     File No. 1:05-CR-133-01
                              :
RICHARD E. MOSES              :
_____ :
```

RULING ON DEFENDANT'S MOTIONS TO SEVER
AND TO SUPPRESS EVIDENCE
(Papers 93 and 96)

With new court-appointed counsel, Defendant Richard E. Moses ("Defendant") has filed a second salvo of pretrial motions. Today's ruling addresses the Motions to Sever and to Suppress Evidence, (Papers 93 and 96), which are denied for the following reasons without a hearing.[1]

I.   Background

Incorporated in this ruling is the factual recitation laid out in the Court's previous ruling on Defendant's first round of pretrial motions. (Paper 82). For present purposes, therefore, it is only necessary to add several record facts related to the December 7, 2005 search warrants.

On December 7, 2005 Special Agent Trevor Carbo, a Vermont State Trooper assigned to the DEA Task Force, applied for federal

---

[1] The government's request to supplement its pleadings in response to the motion to sever (Paper 101 at 1-2) is denied as unnecessary.

1

search warrants to search for drugs, firearms, and drug trafficking materials at Defendant's residence at 156 Kibbling Hill Road, Strafford, Vermont and his business property in Sharon, Vermont known as the "hatchery." Carbo's supporting affidavits, (Papers 5 and 7), detailed the following evidence:

   A.  <u>Damon Hubbert ("Hubbert") and Eric Bartemy ("Bartemy")</u>

   - On or about November 14, 2005 Hubbert told Carbo he and Bartemy had sold drugs for Defendant from 2001 to 2003 during which time Defendant possessed a firearm.

   - On or about December 6, 2005 Carbo reviewed DEA reports explaining how on March 13, 2002, law enforcement officers observed Hubbert dealing cocaine he had obtained from Defendant's prior residence in Bethel, Vermont as well as the hatchery.

   - On or about December 7, 2005 Hubbert told Carbo that from 2001 to 2003 Defendant kept cocaine at the hatchery and that it was "everywhere," meaning hidden in various parts of automobiles located on the property.

   - On or about December 6, 2005 Carbo reviewed DEA reports of Bartemy's January 23, 2003 statement that he and Hubbert delivered narcotics to Defendant which Defendant kept in engine blocks at the hatchery.

   B.  <u>Steven Downer ("Downer")</u>

   - On or about September 13, 2005 Downer told Carbo Defendant was a drug dealer whom Downer had introduced to Jorge Burgos, a supplier of drugs in Connecticut. Downer sold and obtained drugs for Defendant from 2000 until Downer's arrest on May 9, 2005. Downer further explained in detail how he had seen cocaine and "cutting agents" at Defendant's Strafford residence and that Defendant

        would oftentimes "cut" cocaine to sell greater quantities and increase profits. Downer had seen illegal narcotics at the hatchery as well. Finally, Downer relayed that Defendant and his son possessed a 30.06 rifle on Youth Hunting Day in 2004.

C.    Richard Powers ("Powers")

- On or about October 6, 2005 Powers told Carbo that after Defendant's New Hampshire conviction, Defendant "has kept firearms" in the ceiling of a building at the hatchery.

D.    Jorge Burgos ("Burgos") and Scott Rogers ("Rogers")

- In September 2005 Carbo learned from Connecticut Police Detective William Rivera that Connecticut resident Burgos supplied cocaine to Defendant for cash and bought firearms from Defendant. On August 20, 2005 Defendant sent Rogers to meet Burgos (who by then was cooperating with law enforcement) to trade firearms and cash for a half-kilogram of cocaine. Upon his arrest that day, Rogers recounted how he had gone to Defendant's Strafford home, received from Defendant a box containing a firearm and $6,000 to be taken to Hartford, Connecticut, and drove to Hartford in Defendant's vehicle to deliver the items.

E.    Gustavo Cruz ("Cruz")

- On or about November 30, 2005 Cruz told Carbo Defendant came to Boston, Massachusetts eight or nine times in 2004 and early 2005 to purchase cocaine. During one of these purchases, Defendant gave Cruz a firearm.

Carbo's affidavits concluded by stating based upon his training and experience, persons involved in illegal narcotics distribution frequently keep firearms in their residences and places of business.

Based on this information, U.S. Magistrate Judge Jerome J. Niedermeier signed both search warrants on December 7, 2005. Execution of the warrants on December 8, 2005 resulted in the seizure of a number of items, including several firearms and ammunition from Defendant's residence and a four-ounce bottle of a cocaine cutting ingredient from the hatchery.

II.  Discussion

    A.  Motion to Sever (Paper 93)

Invoking Fed. R. Crim. P. 14(a), Defendant argues he would be severely prejudiced if he does not receive separate trials on (1) the drug and § 924 charges (Counts 1-7), and (2) the witness tampering charges (Counts 8-12) because he seeks to testify about the witness tampering charges but remain silent as to the drug charges.

Rule 14 allows a court to exercise its "sound discretion" and order separate trials where a defendant would be prejudiced by the joinder of offenses. United States v. Blount, 291 F.3d 201, 209 (2d Cir. 2002). To justify severance, a defendant must show he would be prejudiced so severely by a joint trial that his constitutional right to a fair trial will be violated. Id. In deciding whether to sever, the Court must weigh the claims of prejudice against gains in judicial efficiency that accompany a

joint trial.  See United States v. Werner, 620 F.2d 922, 929 (2d Cir. 1980).

The only case cited by Defendant in his attempt to establish the requisite prejudice, United States v. Sampson, 385 F.3d 183 (2d Cir. 2004), certainly recognizes the potential for prejudice where a defendant seeks to testify on some charges but remain silent on others.  Id. at 191.  But this potential for prejudice has its limits; specifically, "[p]rejudice may develop when an accused wishes to testify on one but not the other of two joined offenses which are clearly distinct in time, place, and evidence," id. (quoting Cross v. United States, 335 F.2d 987, 989 (D.C. Cir. 1964)), but not where there is a significant connection between the joined offenses.  See Werner, 620 F.2d at 930.  This distinction is a primary reason severance was warranted in Sampson, where "evidence relating to the 2000 counts almost certainly would not have been admitted at a separate trial on the 1998 counts," 385 F.3d at 192, but not warranted in Werner, where "evidence of the 1976 crime would have been admissible at a trial on the 1978 robbery whether [the defendant] testified at the latter or not[.]"  620 F.2d at 930.

The drug related charges and witness tampering charges in this case are quite amalgamated and there is a significant likelihood of evidentiary overlap between them.  Primarily,

evidence of Defendant's witness tampering is most likely admissible at trial to show guilty knowledge on the drug related charges while evidence of the drug related charges would be admissible to show Defendant's motive for engaging in witness tampering.  See, e.g., United States v. Romero, 54 F.3d 56, 60 (2d Cir. 1995) (evidence of defendant's involvement with narcotics operation admissible to show motive to murder government witness).  Furthermore, as the Court stated in its previous ruling, proper jury instructions will minimize any prejudice - the jury will be instructed on the elements of each crime charged and told that each charge must be considered separately.  The Court concludes, therefore, severance of the drug and § 924 charges (Counts 1-7) from the witness tampering charges (Counts 8-12) is not required to prevent unfair prejudice to Defendant.[2]

    B.   Motion to Suppress (Paper 96)

Defendant moves for suppression of all evidence obtained during the execution of the December 7, 2005 search warrants, arguing the search warrants were based on (1) stale information,

---

[2]As a reminder, the Court previously concluded severance or bifurcation of the felon in possession counts (Counts 13 and 14) is necessary to prevent unfair prejudice to Defendant.  (Paper 82 at 19).  Whether to proceed by severance or bifurcation on these counts will be addressed at the final pretrial conference, with the parties remaining free to stipulate to their own effective ameliorative procedure in lieu of severance or bifurcation.

and (2) a false statement in Carbo's affidavits.  As to the alleged false statement, Defendant requests a hearing under Franks v. Delaware, 438 U.S. 154 (1978).

    1.   Staleness

Defendant complains although Carbo's affidavits may have established probable cause that Defendant possessed drugs, firearms, and drug trafficking materials as of August 20, 2005, any such probable cause "had evaporated" by the time the warrants were issued on December 7, 2005.  (Paper 96 at 3).

In Illinois v. Gates, 462 U.S. 213 (1983), the Supreme Court set forth a "totality of the circumstances" test for determining whether probable cause supports a search warrant.  Under this test, the reviewing court does not engage in a hypertechnical review of the sufficiency of the affidavit but rather ensures the issuing judge had a substantial basis for concluding probable cause existed.  Id. at 238-39.

Part of the probable cause determination requires the issuing judge to decide whether the evidence presented supports a current finding of probable cause or whether the evidence has become too stale.  "[T]he principal factors in assessing whether or not the supporting facts have become stale are the age of those facts and the nature of the conduct alleged to have violated the law."  United States v. Martino, 664 F.2d 860, 867

(2d Cir. 1981).  Importantly, where ongoing criminal conduct is at issue, as opposed to an isolated illegal act, "the passage of time between the last described act and the presentation of the application becomes less significant."  Id.  "Courts have accordingly found probable cause to remain current in narcotics cases even where the gap between the most recent information and the search was substantial."  United States v. Melissas, 2005 WL 2414550, at *2 (S.D.N.Y. Sept. 21, 2005).  In fact, "narcotics conspiracies are the very paradigm of the continuing enterprises for which the courts have relaxed the temporal requirements of non-staleness."  United States v. Ortiz, 143 F.3d 728, 733 (2d Cir. 1998) (quoting United States v. Rowell, 903 F.2d 899, 903 (2d Cir. 1990)).

    Here, the affidavits set forth information from no less than six cooperating witnesses, corroborated in part by several undercover operations, detailing Defendant's long-term involvement with drug trafficking, from 2001 to a minimum date of August 20, 2005,[3] and linking this criminal activity to Defendant's residence and the hatchery.  Faced with such a pattern of continuous criminal activity over a protracted period

---

[3] The Court pauses to note the statements attributed to Powers in paragraph 14 of the affidavit have no bearing on the use of August 20, 2005 as an end date because the statements merely refer to Defendant having guns at the hatchery at some unspecified time after 2001.

of time, commonsense says it was more likely than not Defendant was still heavily involved in narcotics trafficking on December 7, 2005.  Coupled with Carbo's averments in paragraphs 18 and 19 of the affidavits based on his training and experience, it follows therefore that it was more likely than not drugs, firearms, and drug trafficking materials would be found at Defendant's residence and the hatchery.  This conclusion is congruent with a number of decisions rebuffing similar staleness challenges.  See Rivera v. United States, 928 F.2d 592, 602 (2d Cir. 1991) ("In investigations of ongoing narcotics operations, we have held that intervals of weeks or months between the last described act and the application for a warrant did not necessarily make the information stale); Melissas, 2005 WL 2414550, at *2-3 (finding no staleness where lapse was more than two months between the last described act and application for a warrant and collecting Second Circuit cases finding no staleness despite lapses of up to twenty months).

    2.   Alleged false statements

Defendant also requests a Franks hearing to address what he asserts are intentional false statements in Carbo's affidavits – specifically paragraph 14 wherein Carbo recounts that Powers said Defendant had firearms at his place of business at some point after being convicted of a felony.

A defendant becomes entitled to a <u>Franks</u> hearing upon making a substantial preliminary showing that: "(1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the judge's probable cause finding." <u>United States v. Salameh</u>, 152 F.3d 88, 113 (2d Cir. 1998).

Assuming he could hurdle the first prong, Defendant has not made a substantial preliminary showing that the alleged false statement was necessary to a finding of probable cause. The statements attributed to Powers add little, if anything, to the overall probable cause determination. For one, as already mentioned, the statements have no bearing on the issue of staleness because they are not time-specific. Second, the statements are mainly redundant of Hubbert's, Downer's, Burgos', Rogers', and Cruz's statements connecting Moses to guns after 2001. Finally and most significantly, the primary purpose of the affidavits was to link Defendant, his home, and the hatchery with a long-term drug trafficking operation so as to justify searching for drugs, guns, and other drug trafficking materials. The extent of this information makes Powers' statements mere drops in a bucket. In other words, were paragraph 14 amputated from the affidavits, the affidavits would still set forth a wealth of

relevant drug trafficking facts from six cooperating witnesses, corroborated in part by several undercover investigations.  A <u>Franks</u> hearing is therefore not warranted.

III. <u>Conclusion</u>

For these reasons, Defendant's Motions to Sever and to Suppress Evidence, (Papers 93 and 96), are DENIED.

Dated at Brattleboro, in the District of Vermont, this 24th day of March, 2008.

/s/ J. Garvan Murtha
J. Garvan Murtha
United States District Judge